UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SYMPLR SOFTWARE LLC,

     Plaintiff/Counter-Defendant,

v.

THEORIA MEDICAL PLLC,

     Defendant/Counter-Plaintiff.

Case No. 23-10698
Honorable Laurie J. Michelson

---

## OPINION AND ORDER GRANTING SYMPLR'S MOTION TO DISMISS THEORIA'S FIRST AMENDED COUNTERCOMPLAINT [43]

In January 2023, Theoria Medical PLLC needed its medical providers credentialed—allegedly "on an emergency basis" (ECF No. 41, PageID.822)—and Symplr Software LLC offered credentialing software and support services that could do the job. So the parties swiftly negotiated and entered into a contract. Symplr agreed to annually credential and re-credential a minimum number of Theoria's providers for at least three years, and Theoria agreed to pay.

By Thursday, January 26, the agreement was executed. Six days later, Theoria had terminated it. So Symplr sued Theoria for breach of contract (ECF No. 16), and Theoria counter-sued for breach of contract and fraud in the inducement (ECF No. 41). Symplr has moved to dismiss Theoria's countercomplaint under Federal Rules of Civil Procedure 12(b)(6) and 9(b). (ECF No. 43.) The motion is fully briefed (ECF Nos. 45, 46) and does not require further argument, *see* E.D. Mich. LR 7.1(f). For the reasons below, Symplr's motion is granted.

# I.

To survive a Rule 12(b)(6) motion to dismiss, a counterclaimant must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "This standard does not require 'detailed factual allegations.'" *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012) (citation omitted). But "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In assessing whether a party has met its burden, the Court accepts as true the non-movant's well-pled factual allegations and draws all reasonable inferences in the light most favorable to the non-movant. *See Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 979 F.3d 426, 440 (6th Cir. 2020).

The Court generally makes its assessment based only on the allegations within the four corners of the countercomplaint. *See Caraway v. Corecivic of Tenn., LLC*, 98 F.4th 679, 682 n.2, 687–88 (6th Cir. 2024); Fed. R. Civ. P. 12(d). But it may consider exhibits attached to the countercomplaint, "items appearing in the record of the case[,] and exhibits attached to [a counter]defendant's motion" if they are referenced in and central to the countercomplaint. *See Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008). "When a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *Cates v. Crystal Clear Techs., LLC*, 874 F.3d 530, 536 (6th Cir. 2017).

2

Thus, in evaluating Symplr's motion to dismiss, the Court may consider the parties' contract, which Theoria attached to its earlier motion to dismiss (ECF No. 21-2; *see also* ECF No. 13-2 (sealed)), as the contract is referenced in and central to the countercomplaint.[1]

## II.

### A. Contract Formation

On Thursday, January 26, 2023, Theoria and Symplr executed a three-year contract. (ECF No. 41, PageID.825; *see* ECF No. 16, PageID.197; *see generally* ECF No. 21-2.) Symplr agreed to credential Theoria's medical providers using its software and related services, and Theoria agreed to pay up-front administration and implementation fees followed by per-provider fees as services were rendered. (ECF No. 16, PageID.196; ECF No. 41, PageID.822.) The contract was comprised of three separately executed documents—the Master Services and License Agreement (ECF No. 21-2, PageID.426–446), Credentialing Services Statement of Work (*id.* at PageID.447–468), and Order Form (*id.* at PageID.469–473).

Three portions of the contract are relevant here.

First, the contract specified that Symplr and Theoria would have a "kick off and implementation" meeting to "develop a detailed 'Implementation Plan.'" (ECF

---

[1] The Court cites only the redacted contract (ECF No. 21-2), and not the unredacted (but otherwise identical) version (ECF No. 13-2) that the parties jointly stipulated to seal (ECF No. 20). Nothing at issue in Symplr's motion to dismiss pertains to the redacted portions of the contract, and indeed neither party cites the sealed version of the contract. (*See* ECF No. 43, PageID.859 & n.2 (Symplr's motion to dismiss citing ECF No. 21-2 as "the parties' contractual Agreement"); *see generally* ECF No. 45 (Theoria's response not directly citing either version of the contract).)

No. 21-2, PageID.447.) The contract elaborated that "[t]he purpose of the Implementation Plan [was] to define transition action items and timelines and obtain a full understanding of the project goals." (*Id*.) So Theoria and Symplr agreed to meet soon after entering the contract to get on the same page about action items and to "define . . . timelines." They omitted from the contract itself any benchmarks or deadlines for Symplr's commencement or completion of the agreed-upon work.

Second, the contract contained a merger clause—a provision titled "Entire Agreement" that reads: "This Agreement constitutes the entire agreement of the Parties and supersedes all prior and contemporaneous agreements, understandings, proposals, negotiations, representations or warranties of any kind, whether oral or written, with respect to the subject matter hereof." (*Id*. at PageID.436.) Under the merger clause, Symplr and Theoria agreed that they "ha[d] not relied on any previous or implied representation, warranty, agreement or statement not expressly set out in this Agreement," and they disclaimed any "right or remedy arising out of any such representation, warranty, agreement or statement." (*Id*.)

Finally, the contract had a termination provision—specifically, a "for cause" termination provision. Under the provision, neither Symplr nor Theoria could terminate the contract except "for cause," which they agreed to narrowly define to include only two situations. (*Id*. at PageID.433.) That is, "[e]ither Party may terminate" the contract via written notice if the other party (1) was subject to a bankruptcy petition or (2) materially breached the agreement, then failed to cure within 30 days of written notice of the breach. (*Id*.)

4

None of these contract terms are in dispute.

## B. Termination

The contract documents were not all signed on the same day (ECF No. 16, PageID.196–197; ECF No. 41, PageID.810, 824–826), but the parties agree that by January 26 they had both executed each document comprising the overall agreement (ECF No. 41, PageID.825; *see id*. at PageID.810; ECF No. 16, PageID.197). The next day, in keeping with the contract's "Pre-Transition Kick Off and Implementation" provision, Symplr and Theoria had a "kickoff call." (ECF No. 16, PageID.200; ECF No. 41, PageID.825.) Symplr proposed its standard implementation timeline of 30 days. (ECF No. 16, PageID.200; ECF No. 41, PageID.826, 831.) To Theoria, this was not the "immediate" timeframe it says it was "repeatedly" promised during contract negotiations. (ECF No. 41, PageID.825–826.)[2] Theoria was "displeas[ed]" (ECF No. 16, PageID.200; *see* ECF No. 41, PageID.825–826) and explained that Symplr's "marketing/business development employees made timeliness promises to Theoria" (ECF No. 41, PageID.825). Theoria alleges that during that call Symplr "admitted that there was often a big discrepancy between what the sales portion of the company is doing/thinking/saying and what the operations side of Symplr could do." (*Id*. at

___

[2] Theoria's motion to dismiss (ECF No. 21), which the Court denied (ECF No. 35) and which preceded its countercomplaint (ECF No. 41), provides context for why Theoria allegedly needed Symplr to start its credentialing work "immediately." Its countercomplaint says comparatively little about the basis for this urgency, simply attributing Theoria's damages to, among other things, "untimely, unappealed or 'stale' claims that were not properly or timely processed due [to] Symplr's inability to perform the credentialing work in the time that it promised it could." (ECF No. 41, PageID.828.)

PageID.826.) For its part, Symplr alleges that during that call Theoria threatened to "consider voiding the contract" if Symplr did not expedite the process. (ECF No. 16, PageID.200.) The parties agree that Symplr responded with an "expedited" timeline—a plan to import Theoria's data into Symplr's software in either six (*id.* at PageID.200–201 (Symplr's complaint)) or seven (ECF No. 41, PageID.825–826 (Theoria's countercomplaint)) days.

According to Theoria, Symplr's proposed week-long timeline still fell short of its precontractual promises that implementation would begin "immediately." (*See id.* at PageID.825–826, 831–832.) So on Wednesday, February 1, 2023, because Symplr "had not begun any work on Theoria[']s account" and had represented it "would not be able to perform credentialing work 'immediately'" (*id.* at PageID.827), Theoria sent Symplr a letter terminating the parties' contract, effective immediately (*id.* at PageID.813; *see* ECF No. 16, PageID.201).

## C. Lawsuit

On March 24, 2023, Symplr sued Theoria for breach of contract. (ECF No. 16 (amended complaint).) Theoria moved for dismissal under Federal Rule of Civil Procedure 12(b)(1), alleging the amount in controversy did not exceed the $75,000 jurisdictional threshold. (ECF No. 21.) After the Court denied that motion (ECF No. 35), Theoria countersued (ECF No. 41). Symplr moved to dismiss Theoria's countercomplaint under Rules 9(b) and 12(b)(6). (ECF No. 43.) That motion is now before the Court.

6

## III.

Symplr's complaint asserts only one count against Theoria: breach of contract. (ECF No. 16.) Theoria counterclaims that it was Symplr who breached the parties' contract when it did not begin credentialing "immediately." (ECF No. 41, PageID.829.) Theoria also brings a second counterclaim for fraudulent inducement. It alleges that Symplr fraudulently induced Theoria to enter the agreement by promising it could begin credentialing as soon as the contract was signed despite knowing it could not. (*Id.* at PageID.830–831.) Symplr moves to dismiss both counterclaims. The Court takes them in term.

### A. Breach of Contract

To state a claim for breach of contract, a party must allege "the existence and terms of a contract, that the defendant breached its terms, and that the breach caused damages to the plaintiff." *Van Buren Charter Twp. v. Visteon Corp.*, 904 N.W.2d 192, 202 (Mich. Ct. App. 2017) (citing *Miller-Davis Co. v. Ahrens Const., Inc.*, 848 N.W.2d 95, 104 (Mich. 2014)); *see In re Brown*, 342 F.3d 620, 628 (6th Cir. 2003). Here, Symplr and Theoria do not dispute the existence of a valid contract between them. They do not even dispute its express terms, including that the contract contained a merger clause (*see* ECF No. 43, PageID.866–869; ECF No. 45, PageID.894–895) and did not contain a timeline or deadlines (*see* ECF No. 41, PageID.828–829; ECF No. 43, PageID.863; ECF No. 45, PageID.893). Instead, Theoria's breach of contract counterclaim relies on a concededly unwritten contractual term: that "time was of the essence in providing credentialing services." (ECF No. 41, PageID.828.) Theoria

asserts that Symplr breached this term "when it did not perform any credentialing work for Theoria starting on or before the week of January 30, 2023." (*Id.* at PageID.829.) The Court cannot agree.

"A court's primary obligation when interpreting a contract is to determine the intent of the parties," which they express through the terms they put in writing. *Bodnar v. St. John Providence, Inc.*, 933 N.W.2d 363, 373 (Mich. Ct. App. 2019); *see McIntosh v. Groomes*, 198 N.W. 954, 955 (Mich. 1924) ("The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties."). "[A]n unambiguous contract reflects the parties' intent as a matter of law," so "[i]f the contractual language is unambiguous, courts must interpret and enforce the contract as written." *In re Smith Tr.*, 745 N.W.2d 754, 758 (Mich. 2008). "Courts will not create an ambiguity where the terms of the contract are clear." *Vaughan v. Doe*, No. 315313, 2014 WL 3747596, at *3 (Mich. Ct. App. July 29, 2014) (citing *City of Grosse Pointe Park v. Mich. Muni. Liab. & Prop. Pool*, 702 N.W.2d 106 (Mich. 2005)). And, relevant here, "silence within a contract is not construed as the equivalent of an ambiguity." *United Skilled Trades, Inc. v. City of Wyandotte*, No. 298380, 2013 WL 1316743, at *2 (Mich. Ct. App. Apr. 2, 2013) (per curiam) (citing *Norman v. Norman*, 506 N.W.2d 254, 255 (Mich. Ct. App. 1993)).

The contract between Theoria and Symplr is clear and unambiguous—and it did not impose an obligation on Symplr to start credentialing Theoria's providers on or by a certain date, let alone in less than six days after entry. Theoria does not disagree that the contract is silent on timing. It maintains, instead, that timeliness

was implicit in the contract in light of the parties' precontractual agreements and understandings. (ECF No. 41, PageID.828–829 ("At all times, time was of the essence in providing credentialing services and Symplr . . . was aware of Theoria's timeliness expectations."); *id.* at PageID.829 ("Because timeliness was inherent in the work to be performed, the express date wherein credentialing work would 'start' it [sic] was not required to be written in the Agreement, particularly where all parties understood Theoria's urgency [to] properly credential its providers.").) In other words, Theoria asks the Court to read an unwritten term into an unambiguous contract based on parol evidence. Well-established Michigan law and the contract's clear merger clause foreclose that argument.

"The parol evidence rule may be summarized as follows: 'parol evidence of contract negotiations, or of prior or contemporaneous agreements that contradict or vary the written contract, is not admissible to vary the terms of a contract which is clear and unambiguous.'" *UAW-GM Hum. Res. Ctr. v. KSL Recreation Corp.*, 579 N.W.2d 411, 414 (Mich. Ct. App. 1998) (quoting *Schmude Oil Co. v. Omar Operating Co.,* 458 N.W.2d 659, 663 (Mich. Ct. App. 1990)). "[O]therwise[,] either party might avoid his obligation by testifying that a contemporaneous oral agreement released him from the duties that he had simultaneously assumed in writing." *Hamade v. Sunoco Inc. (R & M)*, 721 N.W.2d 233, 247 (Mich. Ct. App. 2006). And when contracting parties include an express merger or integration clause, it is "conclusive" evidence of the parties' intent "to nullify antecedent understandings or agreements." *UAW-GM*, 579 N.W.2d at 415.

Here, Theoria agreed in no uncertain terms that its contract with Symplr "constitute[d] the entire agreement of the Parties" and that "all prior and contemporaneous agreements, understandings, proposals, negotiations, representations or warranties of any kind, whether oral or written, with respect to the subject matter hereof" were "supersede[d]" or merged by the contract. (ECF No. 21-2, PageID.436.) Theoria further agreed that "it ha[d] not relied on any previous or implied representation, warranty, agreement or statement not expressly set out in this Agreement and it will have no right or remedy arising out of any such representation, warranty, agreement or statement." (*Id.*) Theoria cannot now base a breach of contract counterclaim on an extracontractual agreement it alleges it had with Symplr. *See Johnny's-Livonia, Inc. v. Laurel Park Retail Props.*, LLC, No. 320430, 2015 WL 2412323, at *3 (Mich. Ct. App. May 19, 2015) ("[W]hen the contract has an integration clause, the aggrieved party cannot introduce evidence to prove the existence of an agreement different than the agreement set forth in the written contract.").

True, parol evidence may be admissible in certain cases of fraud (Theoria's next argument) and "for the rare situation when the written document is obviously incomplete 'on its face' and, therefore, parol evidence is necessary for the 'filling of gaps.'" *UAW-GM*, 579 N.W.2d at 415; *see Metcalf v. Mackinac Cnty. Rd. Comm'n*, No. 322940, 2015 WL 9392719, at *4 (Mich. Ct. App. Dec. 22, 2015) ("[T]he parol evidence rule does not bar the introduction of evidence to explain ambiguous parts of a contract."). But no such gaps exist here. The parties put into writing almost 50 pages

of obligations, warranties, and specifications—and none pertain to timing. The parties' silence speaks for itself. *See Hamade*, 721 N.W.2d at 248–49; *Stryker Corp. v. Nat'l Union Fire Ins. Co.*, 842 F.3d 422, 427–28 (6th Cir. 2016).

Theoria believes a special exception exists when a party seeks to introduce parol evidence that time was of the essence. It asserts that the absence of an express time-is-of-the-essence provision is not itself dispositive and that the Court may look to parol evidence of "surrounding circumstances" to determine the importance of timing. (ECF No. 45, PageID.893.) But, continues Theoria, the Court must wait to weigh such evidence until after the motion to dismiss stage. (*Id.* at PageID.894.)

Theoria's argument starts off well enough. It is true that "[t]he exact words 'time is of the essence' are not required to make time of the essence." *Burton Indus., Inc. v. Atlas Techs., Inc.*, No. 259052, 2006 WL 1290364, at *3 (Mich. Ct. App. May 11, 2006); *see Consoer Townsend Envirodyne Eng'rs v. City of Grand Rapids*, No. 283563, 2009 Mich. App. LEXIS 1992, at *18 (Mich. Ct. App. Sept. 22, 2009) ("An express provision is not required to make time of the essence of the contract."). As Theoria puts it, there is no "magic words" requirement. (*See* ECF No. 45, PageID.893); *Friedman v. Winshall*, 73 N.W.2d 248, 254 (Mich. 1955) (explaining that contracting parties "may make time of the essence . . . by an express declaration that 'time is of the essence'" but that "those words are not essential").

But Theoria is wrong that the next step is to consider "surrounding circumstances" beyond the four corners of the contract. The case law is clear that the first place the Court looks in the absence of an express time-is-of-the-essence

provision, as in all cases of contract interpretation, is the other terms of the contract. "If the parties do not specifically state that time is of the essence, '[a]ny words which show that the intention of the parties is that time shall be of the essence of the contract . . . will have that effect.'" *J.S. Evangelista Dev., LLC v. APCO, Inc.*, No. 357789, 2023 WL 2051174, at *4 (Mich. Ct. App. Feb. 16, 2023) (per curiam) (alteration in original) (quoting *Friedman*, 73 N.W.2d at 254). And if other contract clauses make clear that the parties considered timing essential to their agreement, the inquiry ends there. *See, e.g.*, *Consoer*, 2009 Mich. App. LEXIS 1992, at *16–19 (concluding, despite "no explicit time is of the essence provision," that timing was essential to the agreement in light of contract requirement to "proceed diligently" to complete services and incorporated a "deliberately aggressive schedule"); *Grade v. Loafman*, 22 N.W.2d 746, 747 (Mich. 1946) ("Plaintiff contends that time was not of the essence of the agreement of sale and purchase, because it was not so specified. . . . We cannot agree with this contention, as the terms of the agreement and extension agreement clearly indicate that time was intended to be of the essence."). By the same token, if *nothing* in the writing supports that the parties intended to make time of the essence of the contract, then the contract is clear and must be enforced as written. *See, e.g.*, *J.S. Evangelista Dev.*, 2023 WL 2051174, at *4–5 (concluding that defendant's failure to deliver goods within a particular time frame was not breach of contract because "[n]othing in the language of the [contract] itself" indicated time was of the essence). If the importance of timing remains unclear or ambiguous after this threshold inquiry into the contract's language, only then may

the Court consult extrinsic evidence to determine the parties' intent. *See Gallo v. Moen Inc.*, 813 F.3d 265, 273–74 (6th Cir. 2016) ("Absent ambiguity from this threshold inquiry, no basis for going beyond the contract's four corners exists."); *Blackhawk Dev. Corp. v. Vill. of Dexter*, 700 N.W.2d 364, 370 (Mich. 2005) ("Only where the language in the granting instrument is ambiguous may this Court examine evidence extrinsic to the document to determine the meaning within it."); *Klapp v United Ins. Grp. Agency, Inc.*, 663 N.W.2d 447, 454 (Mich. 2003) ("Looking at relevant extrinsic evidence to aid in the interpretation of a contract whose language is ambiguous does not violate the parol evidence rule.").

In other words, the standard rules of contract interpretation and parol evidence apply to the specific question of timing: an express time-is-of-the-essence provision is enforced as written, the absence of such a provision is taken to mean the absence of such an obligation, and ambiguity either way permits the consideration of parol evidence to ascertain the parties' true intent. *See Friedman*, 73 N.W.2d at 254 ("The rule as to when the facts and circumstances, the nature of the subject matter of the contract, or the character of the interest bargained for make time of the essence cannot be stated in any general way. . . . [T]he general rules of interpretation are applied.").

The cases Theoria cites do not support a different conclusion. To the contrary, in both, the courts concluded that time was of the essence based only on the unambiguous language in the parties' contracts. In *Cooper v. Klopfenstein*, 185 N.W.2d 604 (Mich. Ct. App. 1971), "the contracts expressly stated that time was of

the essence," yet the defendant argued the provision was "meaningless" because the contracts contained "no dates certain for performance." *Cooper*, 185 N.W.2d at 605. The court rejected that argument in light of another provision that "the contractor would commence work immediately upon the signing of the contract and continue the work to completion as rapidly as possible and without interruption." *Id.* at 605–06. The court thus concluded that time was of the essence, then asked whether the defendant's delay was excusable under the contract's exceptions for "matters not within the control of the contractor" such as "weather conditions"—looking beyond the contract's four corners only to affirm the defendant had not shown any such exceptional circumstances.[3] *Id.* at 606. Similarly, in *Friedman v. Winshall*, 73 N.W.2d 248 (Mich. 1955), the contract all but specified that time was of the essence, and the court looked no further than the words of the contract to determine the parties' intent. The buyers agreed to purchase a group of city neighborhoods, provided that "within 105 days from the date [of execution]" the city's installation of sewer and water facilities had reached a specific street intersection. *Friedman*, 73 N.W.2d at 250. The contract further stated that "if said water and sewer are not available within said time, this agreement shall be null and void." *Id.* Based on that language, the Michigan Supreme Court concluded that the parties "clearly . . . intended that the time of closing should be of the essence of the agreement." *Id.* at 253.

---

[3] Also relevant is that the Michigan Court of Appeals recited and affirmed the findings of fact and conclusions of law that the trial judge made during a bench trial. *Cooper*, 185 N.W.2d at 605–07.

Nor can Theoria get around the clear inadmissibility of its parol evidence by insisting Symplr's arguments are improper on a motion to dismiss. According to Theoria, "the determination of whether Symplr actually breached the Agreement between the parties, and whether timeliness is a term, is one that requires the Court to examine the evidence—a function not appropriate on a motion to dismiss under 12(b)(6)." (ECF No. 45, PageID.893.) But the Court is not weighing any evidence. "Under ordinary contract principles, if contractual language is clear, construction of the contract is a question of law for the court." *Van Buren*, 904 N.W.2d at 198. The parties' unambiguous contract, its merger clause, and the parol evidence rule all make prior agreements inadmissible here—regardless of the procedural posture. The strength or sufficiency of Theoria's purported parol evidence is, put simply, irrelevant. Even assuming there had been an antecedent agreement or understanding that time was of the essence, it was discharged as a matter of law by the parties' integrated written agreement. *See UAW-GM*, 749 N.W.2d at 415; *see also Lancia Jeep Hellas S.A. v. Chrysler Grp. Int'l LLC*, No. 329481, 2016 WL 1178303, at *8 (Mich. Ct. App. Mar. 24, 2016) ("[P]laintiff's claim is based on the assertion that the parties had an agreement that was not within the integrated terms of the Settlement Agreement . . . . Because the Settlement Agreement contained a merger clause, this claim failed as a matter of law.").

## B. Fraudulent Inducement

Similar reasons warrant the dismissal of Theoria's second counterclaim—that Symplr fraudulently induced it to enter the contract by promising timelines it could not deliver on.

"Parties are entitled to bring a fraud-in-the-inducement action when they are induced into entering an agreement on the basis of false representations." *Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 304 (6th Cir. 2008). "[T]he claim is that one party was tricked into contracting"—i.e., "the bait-and-switch scenario." *Llewellyn-Jones v. Metro Prop. Grp., LLC*, 22 F. Supp. 3d 760, 778–79 (E.D. Mich. 2014). To bring a fraudulent inducement claim, "a [counter]plaintiff must demonstrate that he or she reasonably relied on the [counter]defendant's representations." *Ram Int'l, Inc. v. ADT Sec. Servs., Inc.*, 555 F. App'x 493, 499 (6th Cir. 2014); *see LIAC, Inc. v. Founders Ins. Co.*, 222 F. App'x 488, 492 (6th Cir. 2007) ("Under Michigan law, the tort of fraudulent inducement 'occurs where a party materially misrepresents future conduct under circumstances in which the assertions may reasonably be expected to be relied upon and are relied upon.'" (quoting *Samuel D. Begola Servs., Inc. v. Wild Bros.*, 534 N.W.2d 217, 219 (Mich. Ct. App. 1995))).

Theoria alleges that when it signed the parties' service contract on January 26, 2023, it did so in reliance on Symplr's knowing or reckless misrepresentations that Symplr would begin credentialing Theoria's medical providers "immediately." (ECF No. 41, PageID.830–833.) "Immediately," says Theoria, was used by the parties to mean "as soon as Symplr's agreements were signed" (*id.* at PageID.830), "as early as

January 23, 2023" (*id.* at PageID.831), and/or "on or before the week of January 30, 2023" (*id.* at PageID.832). "Based on Symplr's repeated representations, Theoria rushed to sign Symplr's Agreements" (*id.* at PageID.830)—then learned the next day, on Friday, January 27, that "Symplr would not be able to begin processing provider credentialing applications until on or after" Friday, February 3 (*id.* at PageID.832). Thus, Theoria asserts that Symplr "deliberately or recklessly tricked" it into entering the contract. (*Id.*)

Theoria's fraudulent inducement counterclaim, like its breach of contract counterclaim, is premised on Symplr's alleged precontractual representations. So the parol evidence rule and the contract's merger clause are again relevant and dispositive. An initial summary of "[t]he intersection of the parol evidence rule, integration clauses, and fraudulent inducement" is helpful. *Wolverine World Wide, Inc. v. Wolverine Can., Inc.*, 653 F. Supp. 2d 747, 772 (W.D. Mich. 2009); *see also Vertical Yield, LLC v. CoherentRx, Inc.*, No. 19-379, 2022 WL 2789224, at \*6–7 (E.D. Tenn. July 15, 2022) (applying Michigan law and explaining the interplay of the parol evidence rule, merger clause doctrine, and fraudulent inducement law). Recall that parol evidence is generally inadmissible when a contract is clear and unambiguous and when a contract contains an express merger clause. *See id.* A merger clause does not, however, exclude parol evidence that would prove certain types of fraud— namely, fraud that would invalidate the merger clause or contract itself. *See Zwiker v. Lake Superior State Univ.*, 986 N.W.2d 427, 442 (Mich. Ct. App. 2022) ("If the contract contains an integration clause, parol evidence is only admissible (1) to prove

17

that the clause was fraudulent, (2) to invalidate the entire contract, or (3) if the contract is obviously incomplete on its face."). So admissibility is the first key question when a party brings a fraudulent inducement claim that relies on parol evidence and stems from a contract with a merger clause. The second is reasonableness. A claimant alleging that the other party's misrepresentations induced them to enter the contract must show that their reliance on those precontractual statements was reasonable—and the presence of a merger clause generally cuts the other way. *See Ram Int'l*, 555 F. App'x at 499 ("Michigan law . . . establishes that when a 'written contract, with [an] integration clause, expressly contradict[s]' a defendant's allegedly fraudulent representations not contained in the contract, a plaintiff's reliance on such representations cannot be reasonable." (alterations in original) (quoting *Novak v. Nationwide Mut. Ins. Co.*, 599 N.W.2d 546, 553–54 (Mich. Ct. App. 1999))).

Start with admissibility. To reiterate, "when a contract contains a merger clause releasing all antecedent claims," parol evidence is admissible to show the alleged fraud invalidates "the merger clause itself" or "the entire contract, including any merger clause." *Newburgh/Six Mile Ltd. P'ship II v. Adlabs Films USA, Inc.*, 724 F. Supp. 2d 740, 755 (E.D. Mich. 2010), *aff'd*, 483 F. App'x 85 (6th Cir. 2012) (citing *UAW-GM*, 579 N.W.2d at 419). Relying on this language, Theoria alleges it would not have contracted with Symplr if Symplr had not misrepresented its credentialing timeline. (ECF No. 41, PageID.830–832.) It points to *Custom Data Solutions, Inc. v. Preferred Capital, Inc.*, 733 N.W.2d 102 (Mich. Ct. App. 2006), where the court found that the contract's merger clause did not preclude the claim that "the defendant made

18

false representations regarding its ability to provide the agreed-upon services in the contract." (ECF No. 45, PageID.895 (citing *Custom Data Sols.*, 733 N.W.2d at 105).) Theoria in turn suggests that timing was so fundamental to the parties' agreement that Symplr's misrepresentations about its ability to do the credentialing work "immediately" amounted to misrepresentations about its ability to do the credentialing work *at all*. (*See id.*)

But a party cannot vitiate a contract simply by asserting that the reason it entered the agreement was some extracontractual understanding not ultimately included in the parties' writing. "[F]raud that relates solely to a[] [precontractual] agreement later nullified by a valid merger clause does not render the contract voidable." *Newburgh*, 724 F. Supp. 2d at 755 (citing *UAW-GM*, 579 N.W.2d at 419). Instead, as Symplr explains in response, to plausibly allege fraud that is sufficient to render a contract or merger clause invalid, a claimant must show it was induced either (1) to believe some prior agreement was memorialized in the contract when it was not, *see Hamade*, 721 N.W.2d at 249, or (2) to forget that prior agreement and "execute an incomplete writing while at the same time describing the writing as complete," *Newburgh*, 724 F. Supp. 2d at 755; (*see* ECF No. 46, PageID.914.) Theoria alleges neither. It does not contend it was led to believe the contract contained an express time-is-of-the-essence provision, nor does it assert it requested the inclusion of such a provision but, because of Symplr's fraudulent representations, was induced to forget about the provision and sign a contract without it. *See Newburgh*, 724 F. Supp. 2d at 755–56; *UAW-GM*, 579 N.W.2d at 419–20; *Wolverine World Wide*, 653 F.

Supp. 2d at 773. In sum, "[Theoria's] only allegation of fraud relates solely to an oral agreement regarding a commencement date of [January 30, 2023, or sooner] that was nullified by the merger clause in the [contract], which is insufficient to nullify the contract." *Newburgh*, 724 F. Supp. 2d at 756. Theoria's fraudulent inducement counterclaim thus fails as a matter of law. *See id.*

Further, even assuming that Symplr promised it would begin credentialing within days of the parties entering the contract (and assuming that Symplr's mobilization after the kickoff meeting was insufficient to satisfy that promise), any reliance by Theoria would have been unreasonable in light of the contract's merger clause. *See Watkins & Son Pet Supplies v. Iams Co.*, 254 F.3d 607, 614 (6th Cir. 2001) (finding it generally "unreasonable to continue to rely on representations after stating in writing that you are not so relying" and affirming dismissal of fraud claim under analogous Ohio law). Theoria maintains that it relied on Symplr's promises as to timing even as it agreed to a contract that contained no provision that time was of the essence, no timeline for Symplr's credentialling services, and no obligations as to timing—yet did contain an explicit declaration that the contract "constitute[d] the entire agreement of the Parties and supersede[d] all prior and contemporaneous agreements."[4] (ECF No. 21-2, PageID.436.) That is unreasonable. *See Star Ins. Co. v.*

---

[4] In fact, the parties' almost 50-page contract contained multiple merger clauses in different subsections. (*See* ECF No. 21-2, PageID.446 ("The parties hereby agree that these [Business Associate Agreement] Terms supersede and replace any prior written or oral agreements between the parties related to the subject matter of these BA Terms."); *id.* at PageID.473 ("This Agreement, together with all attachments hereto, constitutes the entire agreement between the parties hereto

*United Com. Ins. Agency*, 392 F. Supp. 2d 927, 930 (E.D. Mich. 2005) ("[O]ne should not be heard to complain that they relied on oral promises regarding additional or contrary contract terms when there is written proof, signed by both parties, to the contrary."); c*f. MY Imagination, LLC v. M.Z. Berger & Co.*, 726 F. App'x 272, 278 (6th Cir. 2018) ("There may be something to [plaintiff's] claim that it never would have entered into the contract but for [defendant's] promise to exit the stationery business. But [plaintiff] should have accounted for that concern with a non-compete provision, not a fraudulent-inducement suit.").

True, Michigan courts recognize that "where there is a merger clause . . . a party could still justifiably rely upon representations made by another party regarding things outside the scope of the contractual terms." *Star Ins. Co.*, 392 F. Supp. 2d at 929–30; *see United Wholesale Mortg., LLC v. Am.'s Moneyline, Inc.*, 647 F. Supp. 3d 587, 597 (E.D. Mich. 2022) (giving examples of matters beyond a contract's scope "such as the other party's . . . clientele, client retention rate, business structure, etc."); *JAC Holding Enters., Inc. v. Atrium Cap. Partners, LLC*, 997 F. Supp. 2d 710, 730 (E.D. Mich. 2014) (concluding that plaintiffs' reliance on precontractual representations of defendant's financial condition was not rendered unreasonable by merger clause). But this exception does not save Theoria's counterclaim. Theoria does not argue, nor could it, that Symplr's misrepresentations exceeded the scope of the parties' contract. Theoria insists that timing was *central* to

---

respecting the subject matter hereof. All prior representations or agreements, whether written or verbal, are superseded hereby.").)

21

the parties' agreement—so much so that it brings a breach of contract counterclaim alleging that the timing of Symplr's credentialing work in fact constituted a term of the contract. *Cf. UAW-GM*, 579 N.W.2d at 420 ("In light of the obvious importance of this issue to plaintiff, it is difficult to understand why an agreement regarding [this issue] was not included . . . .").

What is more, Theoria's reliance on such a promise would have been unreasonable in light of the contract's "for cause" termination provision, which imposed a notice-and-cure requirement. Even putting aside the merger clause expressly disclaiming reliance on extracontractual representations, and even assuming that during contract negotiations Symplr promised the quick turnaround time that Theoria alleges, it is undisputed that Theoria agreed to give Symplr written notice of any breach and then 30 days to cure it. It would make no sense for Theoria to rely on Symplr's promise to perform in a matter of days while at the same time specifically agreeing to give Symplr at least a month to cure any breach. So the termination provision defeats Theoria's fraudulent inducement claim as well.

Theoria even contends it was "deliberately misle[]d into believing that credentialing work would begin as early as January 23, 2023" (ECF No. 41, PageID.831) and "it believed [credentialing] would begin in Mid-January of 2023" (*id.* at PageID.828). But the contract was not executed until January 26. Theoria could have never reasonably (let alone actually) believed Symplr would start work before the parties had even signed the contract. And it certainly could not have relied on

such a representation when it did sign, by which time it knew Symplr had not begun work.

In sum, the parol evidence rule and the merger clause in the parties' contract both preclude Theoria's fraudulent inducement counterclaim. So, too, does the cure period imposed by the termination provision. Theoria fails to plausibly allege fraud that would invalidate the merger clause, and it fails to show it reasonably relied on Symplr's representations.

## IV.

Accordingly, the Court GRANTS Symplr's motion to dismiss Theoria's countercomplaint (ECF No. 43).

SO ORDERED.


Dated: March 17, 2025

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE